Gerald Peters for the appellant Ramon Samano. Let me briefly state, Mr. Tish, who would be the appellant's attorney, has been ill for several weeks with an undiagnosed illness, so he asked me to represent him today. An association was filed earlier this week, so I'm here to represent Samano. Mr. Peters? Yes, I am. Okay, thank you. The fundamental question to be answered in this appeal is what charges were incurred by Ramon Samano when he went to Presbyterian Hospital. Kaiser takes the position that he didn't incur any expense other than the amount of that profit hospital, after treatment, agreed to reduce the expense to. The initial charge was some $382,000. There is no dispute about that, I think. Subsequently, the hospital voluntarily reduced the charge to about $30,000. The reason why Mr. Samano was treated at Providence Hospital was because Kaiser wrongfully denied coverage for him, and therefore he sought treatment out of the network. He had no choice. What is happening here is that Kaiser is attempting to take advantage of a discount which the hospital offered to Samano because it knew that Samano was uninsured. So the question then arises, what was Kaiser's obligation? Kaiser doesn't point to any terms of the plan stating that his obligation is anything other than to pay for the medical expenses incurred by his insured. In this case, the expenses incurred were some $382,000. But counsel, maybe I'm missing something here, but your client, in the end, never had to pay anything, is that right? That is correct. But that is a different question than whether he ever had a legal obligation to pay the $382,000, which he did in fact have, until the hospital, because of his discount for uninsured patients, reduced the charge. But wouldn't this be a complete windfall if we were to say, well, this treatment was very costly, and they originally wanted to collect that amount of money, but they no longer do, and your client has no obligation. And Kaiser has said that if there are any additional charges, we're going to pay them. Yes, Your Honor. I'm right in this, I think. Yes, you are, Your Honor. But let me come back to the question of when were the charges incurred, and who's getting the windfall here. The charges were incurred at the time of hospitalization, and that's well settled by California law and by the law of various jurisdictions around the country. And you can go to Kaushal Insurance, which says the same thing. Now, is your client intending to turn around and pay that money to Providence? There is, in the record, two liens which Mr. Simoneau executed in favor of the hospital. That doesn't answer my question. Does he intend, if we give you a judgment for $380,000, perhaps minus $31,000, does your client intend to turn around and pay that money to Providence? Yes, that is the point of this proceeding. Providence has no ability to pursue Kaiser because it does not have a contract with it. The only limited remedy which may be available is under the Knox-Keene Act, which provides that emergency service providers can sue health service plans for emergency services that are provided out of network. Well, he's not under any obligation to pay any money to Providence, is he? Well, he is because he has executed liens. I thought they have extinguished his liability. No, he has signed liens. He signed liens on what? He signed liens on the proceeds from the lawsuit, right, if he should win. So if he should not win, those liens don't have any value. That would be correct. As of right now, he doesn't owe any money to the hospital. Well, that's sort of an open question. The hospital has taken the position that it will not pursue him, but there's nothing barring the hospital from changing position and saying, we thought we would get money from Kaiser instead of we're going to pursue you. Right, and Kaiser said, and if they do, then we'll pay them. That's true, but what we have here, again... I don't see how your client's entitled to anything. I think this is between Kaiser and Providence at this point. Well, Your Honor, I think, but let's go back to the question of when were the costs incurred. If you look at the California Supreme Court case on Howell, which just came down about four months ago, there's a very clear answer. And Howell clearly distinguished between charges where there's a preexisting arrangement between the provider and the insurance company as to how much is going to be paid for a service versus a subsequent voluntary reduction in payments. And Howell very clearly distinguishes between those two. And Howell wrote in particular regarding the application of the collateral source rule. But let me just give you a couple of quick quotations from Howell. At page 557, Howell says, Scripps and Corp. accepted the discounted amounts as full payment pursuant to preexisting agreements with Pacific Corp. plaintiff's managed care plan. Since those agreements were in place when plaintiff sought medical care for the providers, her prospective liability was limited to the amounts Pacific Corp. has agreed to pay the providers for the services they would render. Plaintiff cannot meaningfully be said to have incurred the full charges. And again, on page 563, plaintiff did not incur liability for her provider's full bills because at the time the charges were incurred, the providers had already signed on a different price schedule for Pacific Corp.'s members. So I think although you may have some sympathy for Kaiser, the reality is that at the moment Mr. Simano incurred the charges, Kaiser's obligation became fixed. And the effect will be if this court says that Kaiser does not have an obligation to pay the entire amount, what incentive is there for a hospital to ever offer a self-insured reduction to an insured? And specifically looking at Business and Professionals Clause 657A, which is intended to motivate insurance hospitals to offer self-pay reductions to insureds. Why would they ever do that if once they do that, if it is later determined that there was in fact coverage enforced, they can never recover that amount? Well, counsel, if you can give me an absolute assurance that this money goes to counsel and to Mr. Simano jointly, then it could then be transferred to the hospital. I don't understand why he owes them any money. They've released him from any liability and there's no more balance billing. He's off the hook, isn't he? Well, actually that's not correct. The limitation on balance billing only relates to emergency room services. That is the What about Prospect? Prospect case, yes. That was an emergency service, a group of emergency service doctors providing emergency services. That does not apply to the entire hospital. That's their problem. I'm talking about your client. Well, no, Your Honor. I think there is an equitable issue here, which is whether the hospital is entitled to pay Well, when the hospital comes in and makes the equitable argument, I guess we could consider it. But I don't see why your client is owed any money. I think my client is owed money because Kaiser had an obligation when the services were incurred to pay for those services. Kaiser didn't do that. Kaiser is instead attempting to take advantage of a discount that was offered to Mr. Shimano, which he never accepted. May I ask a slightly different question? Did you move for attorney's fees in the district court? Counsel did not because it was apparent from the trial court's, district court's demeanor that that would be useless. There was a judgment already prepared which indicated that there would be no attorney's fees. Aren't you, do you even raise the subject with the district court? You know you're entitled to attorney's fees, the prevailing party in this case. Well, I think the manner in which this, the district court rendered its decision prevents that issue. Which was what? I think the courts took the matter, if I recall correctly, without even a hearing and issued a decision. That's right. So there was no opportunity to say to the court, now that you have rendered your decision, please give us a judgment for the attorney's fees. That never demeanor in the statement said that once $30,000 was paid, Shimano should have packed up his bags and left. Certainly indicated that the district court did not have any intention of awarding attorney's fees for pursuing a claim against Kaiser. However, counsel, I think we've all had the experience when we're practicing lawyers to have to make a record, even though the district court or the trial court has a record, and it is very difficult for one to do. But you have to make your record and say, I am entitled to attorney's fees. And you didn't do that. That's correct. If the judgment was already entered, there was no means once the judgment was entered to then ask for attorney's fees. Okay.  Thank you, Your Honor. Thank you, Your Honor. Brian Condon for Kaiser Foundation Health Plan, Kaiser Foundation Hospitals, and Southern California Permanente Medical Group. The case can be decided on a fairly simple issue that the district court did decide the case on. It's a claim for planned benefits under an ERISA plan. All the planned benefits were provided to Mr. Shimano. The medical charges were paid by Kaiser. Mr. Shimano was not billed for them. He has not been billed for any more charges, and he doesn't owe the hospital any money. It testified to that under oath, and it was undisputed in the other's deposition, and the district court noted that. There are no benefits remaining under the ERISA benefit plan for Mr. Shimano to recover. On the basis of that, and Kaiser's, of course, acknowledgment of the obligation, payment of the bills, and the district court's judgment requiring Kaiser to indemnify Mr. Shimano in the event the hospital ever comes back to Mr. Shimano for any further payment, there's no additional benefits to be recovered by Mr. Shimano. Let me ask you a question about the attorney's fees issue, if I might, Mr. Condon. The complaint was filed on August 1st, 2007, and at that point, Kaiser still hadn't paid the bill, right? Correct. Okay, and then about five months later, after the lawsuit was filed, Kaiser did pay the bill. Yes, between January and May of 2008. Right. It would seem like counsel earned a fee for getting Kaiser off the dime and getting this thing paid at that point. The complicating problem is the case goes on for another 27 months where they're asserting that they have a right to collect money they're not really entitled to collect. At the end of it all, the judge has no fees, but without any real explanation or without any opportunity to move for fees, what do we do about that? You have the facts correct, Your Honor. The additional point that the district court raised, though, was that in the middle of 2008, after Kaiser had paid the fees and amended its answer to acknowledge full responsibility for the fees, the district court issued an OSC, and that OSC was to determine whether there was any justiciable controversy remaining in the case, rather than, as the district court said, declare victory and move on. Mr. Simonos tried to generate a dispute by getting declarations from a collection agent at the hospital to try to show that there was some amount that possibly could be recovered or billed, and that led to further deposition. It seems as though the district court just failed to address the risks of provision that provides for attorneys' fees to prevailing parties. It's certainly, in awarding such fees, he would be able to take all of that into consideration, maybe decide that reasonable attorneys' fees up until the point where Kaiser paid was appropriate. But here, it looks like he didn't do anything. Well, there was no, as the court noted, there was no application for attorneys' fees made, but the district court had clearly indicated in the opinion that the reason why attorneys' fees were denied, you can intuit, based upon the analysis that the judge did, that there was unnecessary litigation. Perhaps if the case had ended in April of 2008 when all the benefits were paid, there might have been a basis for a motion and a determination by the court. There was no application, you're right. I'm not clear when he could have made the application. The judge ruled, and he disposed of the attorneys' fees before an application could be made. I guess he could have asked to have the judge reconsider it. Certainly. You can apply for costs of suit, of following suit. Declaratory judgment was entered in favor of the plaintiff in this case, and no application was made for the costs of suit or attorneys' fees. It's been waived. But the district court did address it in the opinion without specifically addressing entitlement to attorneys' fees. The reasoning of the district court clearly indicates that he, Judge Feist, did not believe that fees were appropriate because of the manner in which the litigation had been pursued to receive a recovery that was simply unavailable. And that was clear from a year and a half prior to when the judgment was entered. So I believe that's the basis for the district court's conclusion. And, like you say, no motion thereafter was made of any type by the plaintiff to demonstrate entitlement to fees. Yeah. If there's no further questions, I'll see you. Okay. Thank you. Thank you. Did Mr. Peters have any time left, Mr. Brown? He's up already. Pardon? You put up your time, Mr. Peters. Thank you, Mr. Peters. Mr.  Thank you. 10-55879 Los Angeles Unified School District versus Garcia. Each side will have 10 minutes.
judges: Fletcher, Silverman, Wardlaw